AO 106 (Rev. 01/09) Application for a Search Warrant

**SEALED**

CLERK'S OFFICE U
AT ABINGDON COURT
FILE  VA

MAR 2 7 2014

JULIA C. DUDLEY, CLERK
BY: *J. Clark*
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| 436 East Main St, Apt. D-1, pm2 3/27/14 | ) |
| Abingdon, VA | ) |
| | ) |

Case No. 1:14MJ63

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location):* 436 East Main St, Apt. D-1, Abingdon, VA (to include the apartment, curtilage, outbuildings, persons present, and vehicles in the vicinity of the apartment provided the keys to and/or operators of the vehicles are present in the apartment.) Attachment A consists of a photograph of the building housing Apartment D-1.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____21_____ U.S.C. § 846/841(a)(1), and the application is based on these facts: **See Attachment C** and 841(a)(1)

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Brian Snedeker, Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/27/14

_____
*Judge's signature*

City and state: _____Abingdon, Virginia_____

**Pamela Meade Sargent, USMJ**
*Printed name and title*

## ATTACHMENT A



436 East Main Street, Abingdon, VA

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1.  I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2.  The purpose of this application and affidavit is to secure a search warrant for the
    premises known as 436 East Main St, Apt. D-1, Abingdon, VA.  This affiant, after
    obtaining and reviewing information, believes there is evidence of conspiracy to
    manufacture methamphetamine and/or manufacturing methamphetamine at 436 East
    Main St, Apt. D-1, Abingdon, VA  in violation of 21 USC 846/841(a)(1) and
    841(a)(1).

3.  I am a Special Agent with the Drug Enforcement Administration (DEA) and have
    been so employed for approximately (22) years.  During my employment I have
    received comprehensive classroom training from the Drug Enforcement
    Administration in specialized narcotic investigative matters including but not limited
    to drug interdiction, drug detection, money laundering techniques and schemes,
    smuggling, and the investigation of individuals and organizations involving the
    smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances
    and controlled substance precursors.  I am a graduate of both the DEA's Clandestine
    Laboratory Investigation/Safety Certification Program and the DEA's Clandestine
    Laboratory Site Safety Officer School.  I have participated in the execution of more
    than (300) narcotics related search warrants and the seizure and dismantling of more
    than (200) clandestine methamphetamine laboratories.   I have testified as an expert
    on multiple occasions in Federal Court and State Court regarding the clandestine
    manufacturing of methamphetamine.

4.  The facts set forth in this affidavit are known to me as a result of my personal
    participation and information provided to this affiant by other law enforcement/
    probation officers.

5.  The manufacturing of methamphetamine (a Schedule II Controlled Substance) by
    way of the ammonium nitrate/lithium metal method (also known as the "shake and
    bake" or "one pot" method) requires pseudoephedrine/ephedrine (obtained through
    the processing of cold/allergy pills, tablets, gelcaps, and liquids containing
    pseudoephedrine or ephedrine), ammonium nitrate (found in instant cold packs), and
    lithium metal (found in lithium batteries).  Other chemicals/ingredients commonly
    used during the ammonium nitrate/lithium metal method include sodium hydroxide
    (e.g. Red Devil Lye), petroleum ether/petroleum naphtha/white gas (e.g. Coleman
    Fuel, lighter fluid), acetone,  muriatic acid, sulfuric acid, table salt, and aluminum
    foil.  Equipment/tools commonly used during the manufacturing of methamphetamine
    include soda bottles, glass mason jars, plastic food storage containers, plastic tubing,
    electrical tape and/or duct tape, coffee filters, pipe cutters (often used to open lithium
    batteries),  Ziplock-type plastic bags, frying pans/electric skillets/propane burners (to
    dry the methamphetamine), razor blades, digital scales, funnels, and stirring utensils.

6. Individuals who manufacture methamphetamine usually use and sell/trade the methamphetamine they manufacture.   These manufacturers routinely have other persons (hereafter referred to as "shoppers") assist them in the purchasing of precursors, chemicals, and equipment/supplies needed to manufacture methamphetamine.  Manufacturers will regularly pay shoppers in methamphetamine (to use and sell) and/or cash for their assistance.

7. During December 2013, this affiant participated in the execution of a federal search warrant at Mari Gaddy's home near Bristol, VA.  As a result of the execution of the search warrant, an ammonium nitrate/lithium metal methamphetamine lab was seized from the residence.   Gaddy and her husband were present when the warrant was executed.  Gaddy's husband was charged at the scene with methamphetamine manufacturing related offenses.  Gaddy was not charged.

8. This affiant recently reviewed pseudoephedrine sales data provided by a number of retailers (as required under The Combat Methamphetamine Epidemic Act of 2005) and sales data provided by a retail store that sell lithium batteries and noted the following information (not all inclusive):

- On 12-29-2013, Gaddy purchased a (10) day supply of pseudoephedrine [this date was less than two weeks after the search warrant referenced in ¶7 above was executed at Gaddy's residence.]

- On 01-02-2014, an individual (hereafter referred to as "Person A") purchased a (12) day supply of pseudoephedrine.

- On 01-07-2014, Gaddy purchased lithium batteries.

- On 01-10-2014, Gaddy purchased a (3) day supply of pseudoephedrine.

- On 01-10-2014, Person A purchased a (10) day supply of pseudoephedrine.

- On 01-13-2014, Gaddy purchased a (10) day supply of pseudoephedrine.

- On 01-18-2014, Person A attempted to purchase a (10) day supply of pseudoephedrine.

- On 01-22-2014, Person A purchased a (10) day supply of pseudoephedrine.

- On 01-24-2014, Gaddy purchased a (10) day supply of pseudoephedrine.

- On 02-01-2014, Person A purchased a (12) day supply of pseudoephedrine.

- On 02-07-2014, Person A purchased a (3) day supply of pseudoephedrine.

- On 02-08-2014, Gaddy purchased a (10) day supply of pseudoephedrine.

- On 02-12-2014, Person A purchased a (12) day supply of pseudoephedrine.

- On 02-15-2014, Gaddy purchased a (12) day supply of pseudoephedrine.

- On 02-21-2014, Gaddy attempted to purchase a (12) day supply of pseudoephedrine (Gaddy had already purchased a (22) day supply of pseudoephedrine during the preceeding (13) days).  On this same date, Person A purchased a (10) day supply of pseudoephedrine.

- On 02-22-2014, Gaddy purchased a (5) day supply of pseudoephedrine.

- On 02-26-2014, Gaddy purchased a (10) day supply of pseudoephedrine.  (At this point, Gaddy had purchased a (37) day supply of pseudoephedrine during the first (26) days of February 2014.)

- On 02-27-2014, Person A attempted to purchase a (6) day supply of pseudoephedrine.

- On 03-03-2014, Person A purchased a (6) day supply of pseudoephedrine.

- On 03-08-2014, Gaddy attempted to purchase a (5) day supply of pseudoephedrine.

- On 03-12-2014, Person A attempted to purchase a (12) day supply of pseudoephedrine.

- On 03-13-2014, Gaddy purchased a (5) day supply of pseudoephedrine.

- On 03-17-2014, Person A purchased a (6) day supply of pseudoephedrine.

- On 03-18-2014, Gaddy purchased a (10) day supply of pseudoephedrine.

- On 03-24-2014, Person A purchased a (10) day supply of pseudoephedrine.

9.   During the night of 02-26-2014, law enforcement observed Person A  (known by law enforcement/probation to be a co-habitant of a convicted methamphetamine manufacturer/co-conspirator) present at Gaddy's new residence in Abingdon, VA.

10.  During the night of 03-24-2014, law enforcement observed an individual (hereafter referred to as "Person B") deposit a trash bag in a public area in Abingdon, VA.  Law enforcement examined the contents of the trash bag and discovered ammonium nitrate/lithium metal methamphetamine lab waste inside.  Person B was subsequently interviewed by law enforcement that same night.  Person B admitted being a user of methamphetamine (while currently on state probation) and claimed that he/she was just disposing of the trash bag for another subject (named by Person B and recognized by law enforcement as being a current co-habitant of Gaddy).  Person B claimed that Gaddy manufactures methamphetamine every day at her apartment.  A consent search of Person B's residence on 03-24-2014 revealed no methamphetamine manufacturing equipment/supplies.

11. Pseudoephedrine, lithium (batteries), and ammonium nitrate (instant cold packs) are
    key ingredients to the manufacturing of methamphetamine via the ammonium
    nitrate/lithium metal method.  During the last several years, this affiant has routinely
    found and seized (via search warrants and consent searches) the aforementioned
    ingredients (and packaging of same) at methamphetamine manufacturing/precursor
    preparation sites.  This affiant has encountered and seized said ingredients at such
    sites in various forms/stages (e.g. sludges/mixed with liquids) related to
    methamphetamine production and contained in a variety of glass and plastic
    containers days, weeks, and even months after the ingredients were purchased at
    pharmacies/retail stores.

12. This affiant is aware based on his training, experience, and conversations with
    other law enforcement officers that individuals who illegally manufacture
    methamphetamine and/or conspire to do so typically maintain methamphetamine
    manufacturing precursors/chemicals/equipment (as described in paragraph #5 above)
    along with receipts / notes / records / telephone numbers (as they pertain to
    manufacturing/conspiracy to manufacture), and other items as listed and explained
    on Attachment B (of the Application and Affidavit for Search Warrant to which this
    affidavit is attached) on their persons, inside their residences, garages,
    outbuildings/barns, campers, vehicles (or the vehicles they operate), and inside of
    vehicles registered to other persons when those vehicles are parked at the
    manufacturer's/conspirator's residence/property.

13. Individuals who manufacture methamphetamine and/or conspire to do so routinely
    have persons who are methamphetamine users and/or additional co-conspirators
    (i.e. shoppers) present at their residences/properties.  These users/co-conspirators
    often illegally possess methamphetamine and methamphetamine use
    paraphernalia and routinely possess notes, stored telephone numbers, and messages
    pertaining to their relationships with methamphetamine manufacturers /
    manufacturing co-conspirators.   These users/co-conspirators are oftentimes in
    possession of other items as listed and explained on Attachment B (of the
    Application and Affidavit for Search Warrant to which this affidavit is attached) and
    possess these items on their persons and in their vehicles (or the vehicles they
    operate) which are oftentimes parked at the drug manufacturer's/co-conspirator's
    residences/properties.

14. The clandestine manufacturing of methamphetamine is an extremely dangerous
    process that involves the use of toxic, flammable, explosive, and incompatible
    chemicals.  Explosions, fires, and toxic gasses generally pose the greatest threats to
    law enforcement officers executing search warrants at methamphetamine
    manufacturing sites.  It is not uncommon for methamphetamine manufacturers to
    panic when they become aware of a law enforcement presence at a
    methamphetamine manufacturing site.  As a result of their panic, methamphetamine
    manufacturers have been known to attempt to dispose of evidence of their
    manufacturing by throwing/pouring chemicals into toilets, bathtubs, and sinks before
    law enforcement can gain entry and secure the premises.  The pouring/mixing of the
    various chemicals during the attempted disposal creates an increased risk of
    explosion, fire, and toxic gas exposure due to the nature of the chemicals involved.
    This affiant believes that the above presents reasonable suspicion that knocking and

announcing the presence of law enforcement officers at the time of the execution of this search warrant would prove dangerous to the law enforcement officers involved in the execution of the search warrant.

15. Mari Gaddy's known residence is 436 East Main St, Apt. D-1, Abingdon, VA (located within the Western District of Virginia).

16. Based upon the facts set forth above, I believe that there is probable cause for the issuance of a search warrant for the premises known as 436 East Main St, Apt. D-1, Abingdon, VA as there is probable cause to believe that there is evidence of a violation of  21 USC 846/841(a)(1) and/or 841(a)(1) at said premises.


_____        3-27-2014
Brian Snedeker, Special Agent (DEA)        Date


Subscribed and sworn to before me, this the ___27th___ day of __March 2014__
in Abingdon, Virginia.

Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia